IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPH A. SANDS, | CASE NO. 1:21-CV-02399-JJH |
| Petitioner, | JUDGE JEFFREY J. HELMICK |
| v. | UNITED STATES DISTRICT JUDGE |
| LEON HILL, Warden, | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| Respondent. | **REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

Petitioner Joseph Sands has filed three Motions to Stay (ECF Doc. Nos. 2, 6, and 10), and Respondent Harold May[1] has filed a Motion to Transfer Successive Petition (ECF Doc. No. 9). This matter is before me pursuant to U.S. District Court Judge Jeffrey J. Helmick's order of referral for a preparation of a Report and Recommendation on the pending motions. (*See* ECF non-document order dated 09/02/2022). For the reasons set forth below, I RECOMMEND that the Court DENY May's Motion to Transfer Successive Petition, DENY Sands's Motions to Stay, and DISMISS the matter without prejudice. Alternatively, I RECOMMEND that the Court ORDER Sands to file an amended habeas petition and DENY the Motions to Stay (ECF Doc. Nos. 2, 6, and 10) as moot.

## II. RELEVANT PROCEDURAL HISTORY

### A. State Court Proceedings

---

[1] As noted in Respondent's Motion to Transfer Successive Petition, Harold May is the current warden of the Marion Corrections Institution and should be substituted for Leon Hill as the proper Respondent in this matter. (ECF Doc No. 9, PageID # 39); *see* https://drc.ohio.gov/mci, last accessed October 11, 2022; 28 U.S.C.§ 2243 ("The writ . . . shall be directed to the person having custody of the person detained.").

1

In 2006, a Lake County jury found Sands guilty of criminal charges stemming from Sands's plot to murder several public officials. *State v. Sands*, No. 2020-L-038, 2020 WL 4437177, at *1 (11th Dist. Ohio Aug. 3, 2020). In 2008, the Ohio Court of Appeals for the Eleventh District affirmed Sands's convictions and sentence on direct appeal. *State v. Sands*, No. 2007-L-003, 2008 WL 5428252 (11th Dist. Ohio Dec. 31, 2008). Sands then filed several additional appeals, most of which lacked merit. *See Sands*, No. 2020-L-038, 2020 WL 4437177, at * 1 (listing Sands's meritless appeals). In 2016, however, the Eleventh District determined that the trial court erred in imposing post-release control because the sentencing entry stated "that post release control is mandatory in this case *up to a maximum of five years*" when it should have sentenced Sands to five years of mandatory post-release control. *State v. Sands*, No. 2015-L-134, 2016 WL 5846550, at *5 (11th Dist. Ohio Sept. 30, 2016) (emphasis in original). This error also occurred during the sentencing hearing. *Id.*

As a result of the trial court's erroneous imposition of post-release control, the Eleventh District vacated the post-release control portion of Sands's sentence and remanded the matter for a new sentencing hearing. *Id.* In doing so, the Eleventh District relied upon Ohio Revised Code Section 2929.191(C), which allows trial courts to correct errors in the imposition of post-release control via nunc pro tunc entries. *See State v. Singleton*, 124 Ohio St.3d 173, at syllabus, 920 N.E.2d 958 (2009). On remand, the trial court held a hearing and corrected the error via a "Nunc Pro Tunc" entry. *See State v. Sands*, Nos. 2019-L-022, 2019-L-023, 2019 WL 6464203, at *1 (11th Dist. Ohio Dec. 2, 2019).

    **B.**    **Federal Habeas Petitions**

On February 6, 2014 (prior to Sands's resentencing), Sands filed a habeas petition under 28 U.S.C. § 2254. (Case No. 1:14-cv-00251-JJH, ECF Doc. No. 1), which the Court denied as untimely (*Id.* at ECF Doc. No. 25, PageID # 623). Sands then pursued the mostly unsuccessful

2

state court appeals referenced above. *See Sands*, No. 2020-L-038, 2020 WL 4437177, at * 1 (11th Dist. Aug. 3, 2020) (listing Sands's meritless appeals).

In 2019, Sands filed another habeas petition under 28 U.S.C. § 2254. (Case No. 1:19-cv-02018-JJH, ECF Doc. No. 1). Among other claims, Sands challenged the trial court's 2016 sentencing entry, *i.e.*, the "Nunc Pro Tunc" entry correcting the imposition of post-release control. (*Id.* at PageID # 16). On the same day Sands filed his habeas petition, Sands also filed a Motion to Stay his petition on the basis that he had three appeals pending in state court. (Case No. 1:19-cv-02018-JJH, ECF Doc. No. 3, PageID # 22). The Court dismissed Sands's petition without prejudice "for lack of exhaustion pursuant to Rule 4 of the Rules Governing *Habeas Corpus* Cases." (Case No. 1:19-cv-02018-JJH, ECF Doc. No. 4, PageID # 25).

On December 23, 2021, Sands filed the instant habeas petition ("Petition") under 28 U.S.C. § 2254. (ECF Doc. No. 1). Like he did with his prior habeas petition, Sands also filed a Motion to Stay his petition on the same day. (ECF Doc. No. 2). He subsequently filed two additional Motions to Stay. (ECF Doc. Nos. 6, 10).

### C. Sands' Motions to Stay

In his first Motion to Stay, Sands moved for a 180-day stay on the basis that he retained counsel who is pursuing a habeas petition in state court regarding "ground two raised in the instant petition." (ECF Doc. No. 2, PageID # 20-21). On March 16, 2022, Sands filed a second Motion to Stay, asserting that the Court had not ruled on his first motion, and requesting an additional 8-month stay. (ECF Doc. No. 6, PageID # 31-32). Sands argued, in part, that "[t]here are some issues that [are] raised in the Instan[t] petition [that are] still pending before the State Court. If this Trial Court allows this Habeas proceeding[] to continue, the Court would create a Procedural bar to issues pending in State Court, and the Trial Court would create a successive petition if the Petitioner ha[s] to return to the Federal Court with said issue." (*Id.* at PageID # 32). On June 30,

2022, Sands filed a third Motion to Stay, asserting that the Court had not ruled on his first or second motions, and requesting an additional 8-month stay. (ECF Doc. No. 10, PageID # 53-54). Sands asserted that he has an appeal pending with the Ohio Court of Appeals for the Third District, and again asserted that some of the issues raised in his Petition are still pending in state court. (*Id.* at PageID # 54). May has not opposed Sands's Motions to Stay.

  D.  **May's Motion to Transfer Successive Petition**

On June 30, 2022, May filed a Motion to Transfer Successive Petition. (ECF Doc. No. 9). In it, May argues that Sands's Petition is a second or successive habeas petition because: (1) this Court already rejected Sands's initial habeas petition on the basis that it was time-barred; and (2) the trial court's 2016 "Nunc Pro Tunc" entry is not a "new" sentencing judgment that would allow Sands to file another habeas petition without first obtaining authorization from the Court of Appeals for the Sixth Circuit. (ECF Doc. No. 9, PageID # 43). As a result, May argues, this Court lacks jurisdiction over Sands's successive petition, and must transfer Sand's petition to the Sixth Circuit. (*Id.*)

**III.**  **LAW AND ANALYSIS**

  A.  **May's Motion to Transfer Successive Petition**

    1.  ***Successive Habeas Petitions***

Absent authorization from the Court of Appeals, a district court lacks jurisdiction to entertain a second or successive petition for writ of habeas corpus. 28 U.S.C. § 2244(b)(3); *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997). When a petitioner files such a petition without the necessary approval, the district court must transfer the petition to the Court of Appeals. *In re Sims*, 111 F.3d at 47.

The Court of Appeals may then only authorize such filing if the petitioner first makes a *prima facie* showing that the new application satisfies specific statutory requirements. 28 U.S.C.

§ 2244(b)(3)(C). Under those statutory requirements, a claim in a "second or successive" application must be dismissed if it was already presented in the prior application. *See* 28 U.S.C. § 2244(b)(1). If the claim was not presented in the prior application, the statute still requires dismissal except in limited circumstances where:

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

The phrase "second or successive" is a "term of art." *Slack v. McDaniel*, 529 U.S. 473, 486 (2000). In determining whether a habeas petition constitutes a "second or successive" application, the Supreme Court has explained that "the phrase 'second or successive' must be interpreted with respect to the judgment challenged." *Magwood v. Patterson*, 561 U.S. 320, 333 (2010). Thus, a habeas application that "challenges a new judgment for the first time . . . is not 'second or successive' under § 2244(b)." *Id.* at 324. The Sixth Circuit explains: "If an individual's petition is the first to challenge a particular state judgment – even if the applicant has previously filed other petitions challenging other judgments – the petition is not 'second or successive.'" *In re Stansell*, 828 F.3d 412, 415 (6th Cir. 2016) (citing *Magwood*, 561 U.S. at 331-33). The relevant "judgment" for these purposes is the sentencing judgment. *See Burton v. Stewart*, 549 U.S. 147, 156 (2007) (quoting *Berman v. United States,* 302 U.S. 211, 212 (1937)) ("Final judgment in a criminal case means sentence. The sentence is the judgment.").

2. ***Resentencing Orders as New Judgments***

In *Magwood*, the United States Supreme Court considered whether a new sentence "was an unreviewable 'second or successive' challenge under 28 U.S.C. § 2244(b)[.]" *Magwood*, 561 U.S. at 323. The Court held that it was not because a new sentence is a new judgment. *Id.* Because the defendant in *Magwood* only challenged his sentence, the Court declined to address whether a new sentence (and, therefore, a new judgment) would also allow a petitioner to challenge his original, undisturbed conviction. *Id.* at 342. The Sixth Circuit, however, addressed that question in *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015), holding that "a habeas petitioner, after a *full* resentencing and the new judgment that goes with it, may challenge his undisturbed conviction without triggering the 'second or successive' requirements." *Id.* at 156 (emphasis added).

Then, after *King*, the Sixth Circuit decided *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016). *Crangle* involved a statute-of-limitations issue, but relied upon the reasoning in *Magwood* and *King* to conclude, in part, that a *limited* resentencing that results in a new, worse-than-before sentence, amounts to a new judgment for habeas purposes. *Id.* at 677-78. In *Crangle*, the defendant's plea agreement indicated that the defendant was subject to "up to 5 years" of post-release control. *Id.* at 675. At sentencing, however, the trial court informed the defendant that he was subject to "straight parole" and not post-release control. *Id.* "The sentencing entry also did not indicate that [the defendant] would be subject to post-release control[.]" *Id.*

The trial court in *Crangle* later issued a "nunc pro tunc" entry that indicated that the defendant was subject to "a *mandatory* period of *5 years*" of post-release control. *Id.* at 676 (emphasis in original). The Sixth Circuit determined that the trial court's entry in this regard – despite being labeled as a "nunc pro tunc" entry – created a new sentence and, therefore, a new judgment for habeas purposes. *Id.* at 679-80. It explained:

> If the . . . *nunc pro tunc* order merely corrected a record to accurately reflect the court's actions, it would not be a new sentence . . . .
>
> But that's not what happened here. At sentencing, the trial court told Crangle that

6

> he would not be subject to post-release control and entered judgment accordingly. The later *nunc pro tunc* order walked back the trial court's statement, imposed post-release control, and reworded Crangle's sentence. That is not merely the correction of a clerical error. No matter the label, the . . . order changed the substance of his sentence—and thus amounted to a new judgment. A state court's decision to affix the label *nunc pro tunc* to an order does not control the federal questions whether the order changes his conditions of confinement.

*Id.* at 680. In reaching this conclusion, the Sixth Circuit noted that the "nunc pro tunc" entry "materially increase[d] the potential restrictions on [the defendant's] liberty" with a mandatory sanction and possible future imprisonment. *Id*. at 679.

### 3. *Analysis*

May argues that the trial court's "Nunc Pro Tunc" entry, which changed Sands's post-release control from a mandatory term of *up to* five years, to a mandatory term *of* five years, is not a new sentence or judgment for habeas purposes. (ECF Doc No. 9, PageID # 51). May argues that Sands did not receive a full resentencing under *King*, and that his new sentence is not a worse-than-before sentence under *Crangle*. (*Id.*) As a result, May argues: (1) Sands's petition is a successive petition; (2) as such, this Court lacks jurisdiction; and (3) this Court should transfer Sands's successive petition to the Sixth Circuit. (*Id.* at PageID # 51-52).

Despite May's arguments to the contrary, the trial court's "Nunc Pro Tunc" entry is a worse-than-before sentence under *Crangle* and, therefore, a new judgment for habeas purposes. Although labeled as a "Nunc Pro Tunc" entry, the trial court's entry substantively changed Sands's sentence for the worse by imposing a mandatory term of five years of post-release control, as opposed to the previously imposed term of mandatory post-release control "up to five years[.]" *See Wooden v. Marquis*, No. 5:18CV937, 2019 WL 3927254, at *8 (N.D. Ohio Aug. 20, 2019) (holding that a sentencing entry imposing mandatory post-release control, as opposed to the previously imposed possible/undefined term of post-release control contingent on the determination of the parole board, was a "new, worse than before" sentence under *Crangle*). While

some decisions regard this type of change as a correction of a "technical error[,]" the undersigned disagrees, especially in light of *Crangle* and subsequent Sixth Circuit decisions. *See, e.g.*, *Patterson v. Bracy*, No. 5:17 CV 173, 2017 WL 2305248, at *2, 4 (N.D. Ohio May 23, 2017) (noting that changing post-release control from "*up to* five years" to "*mandatory* for five years" amounted to "correcting a technical error[,]" but not addressing *Crangle*) (emphasis in original); *Avery v. Wainwright*, No. 20-3530, 2022 WL 1498431, at *2 (6th Cir. May 12, 2022); *id.* at *13-14 (Guy, Jr., J., concurring) (acknowledging that a judgment entry correcting the imposition of post-release creates a new judgment under *Crangle* when "the court told [defendant] at sentencing that he would be subject to 'up to five years of mandatory post-release control' and the sentencing entry noted that [the defendant] was subject to post-release control under Ohio Rev. Code § 2967.28, but the court did not specifically note the applicable five-year mandatory term of post-release control under § 2967.28(B)(1).").

Moreover, this case is distinguishable from those where the trial court correctly imposed post-release control in open court, but the subsequent sentencing entry erroneously imposed post-release control. *See, e.g.*, *Camara v. Haviland*, No. 3:16 CV 756, 2017 WL 6459592, at *7 (N.D. Ohio Oct. 6, 2017), *report and recommendation adopted*, No. 3:16CV756, 2017 WL 6453321 (N.D. Ohio Dec. 15, 2017) (holding that *Crangle* did not apply because the nunc pro tunc entry at issue "merely corrected a record to accurately reflect the court's actions[.]"). In those situations, the nunc pro tunc entries did what such entries are intended to do: correct the record to reflect what actually occurred. *See Crangle* 838 F.3d at 680.

Here, the trial court incorrectly advised Sands that he was subject to mandatory post-release control "*up to a maximum of five years*" during the sentencing hearing, and in its subsequent sentencing entry. *State v. Sands*, No. 2015-L-134, 2016 WL 5846550, at *5 (11th Dist. Ohio Sept. 30, 2016) (emphasis in original). It later corrected its entry to reflect a mandatory term

8

of five years, removing the discretionary "*up to*" portion of the still-mandatory post-release control. *See Sands*, Nos. 2019-L-022, 2019-L-023, 2019 WL 6464203, at *1 (11th Dist. Ohio Dec. 2, 2019); *State v. Allen*, Nos. 19AP-285, 19AP-286, 162 N.E.3d 125, 130 (10th Dist. Ohio Nov. 3, 2020) (quoting *State v. Young*, No. 2009-T-0130, 2011 WL 3558105, *9 (11th Dist. Ohio Aug. 12, 2011)) ("In general, Ohio courts have held that the use of 'up to' language when imposing post-release control 'connotes that the period is discretionary rather than mandatory.'"). This resulted in a worse-than-before sentence under *Crangle* and, therefore, a new judgment for habeas purposes. As a result, Sands's Petition is not a successive petition, and I recommend that the Court deny May's Motion to Transfer Successive Petition (ECF Doc. No. 9).

    **B.**    **Sands' Motions to Stay**

        *1.*    ***Rules Governing Section 2254 Cases in the United States District Court***

Promptly after the filing of a petition for habeas corpus, a district court must examine the petition to determine whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court[.]" Rule 4 of the Rules Governing Section 2254 Cases; *see also* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).

Before a court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

        *2.*    ***Mixed Habeas Petitions: Exhausted & Unexhausted Claims***

When, as appears to be the case here, a court is presented with a mixed petition (*i.e.*, a

9

petition with exhausted and unexhausted claims), the entire petition may be dismissed without prejudice. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). When a mixed petition is dismissed, and the petitioner thereafter exhausts his state court remedies, the petitioner may file a new habeas petition without his petition being treated as an unauthorized second or successive petition. *See Slack v. McDaniel*, 529 U.S. 473, 487 (2000).

After the Antiterrorism and Effective Death Penalty Act ("AEDPA") established a one-year statute of limitations on habeas petitions, however, the Supreme Court determined that the dismissal of an entire petition could potentially preclude the petitioner from bringing his already-exhausted claims in a new petition. *See Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). To avoid statute of limitations problems, the Court held that district courts may use their inherent stay authority to hold in abeyance mixed habeas petitions in order to allow the petitioner the opportunity to bring unexhausted claims to conclusion in state court. *Id.* at 275 (noting that, without the use of inherent stay authority, habeas petitioners would run the risk of forever losing their opportunity for federal review of their unexhausted claims). Nonetheless, the Supreme Court warned that the frequent stay and abeyance of mixed federal habeas petitions could: (1) undermine AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings; and (2) decrease a petitioner's incentive to exhaust all his state claims before filing his federal petition. *Id.* at 277. Thus, before considering whether a stay is appropriate, a court should first determine whether the statute of limitations tolling provision under 28 U.S.C. § 2244(d)(2) would preserve the opportunity to litigate the petitioner's already-exhausted claims in a new petition filed after the unexhausted claims were fully considered in state court. *Cf. id.* at 276-77 (noting that Congress enacted AEDPA against the backdrop of the total exhaustion requirement and that included a tolling provision in 28 U.S.C. § 2244(d)(2) in order to balance the interests served by the exhaustion requirement and the limitation period).

### 3. *Analysis*

Regarding Sands' first Motion to Stay, I recommend that the Court deny that Motion as moot because: (1) Sands filed it on December 23, 2021; (2) Sands requested a 180-day stay; and (3) more than 180 days has passed since Sands filed that motion. (*See* ECF Doc. No. 2). Sands filed his second Motion to Stay on March 16, 2022 (requesting an 8-month stay), and his third Motion to Stay on June 30, 2022 (requesting an 8-month stay). (ECF Doc. Nos. 6, 10). As of the filing of this Report and Recommendation, those motions remain ripe for review.

As previously noted, in his second Motion to Stay, Sands asserted that "[t]here are some issues that [are] raised in the Instan[t] petition [that are] still pending before the State Court. If this Trial Court allows this Habeas proceeding[] to continue, the Court would create a Procedural bar to issues pending in State Court, and the Trial Court would create a successive petition if the Petitioner ha[s] to return to the Federal Court with said issue." (ECF Doc. No. 6 at PageID # 32). In his third Motion to Stay, Sands asserted that he has an appeal pending in the Ohio Court of Appeals for the Third District, and again asserted that the issues raised in his state-court habeas petition are still pending in state court. (ECF Doc. No. 10, PageID # 54).

A review of Sands's Petition and Motions to Stay indicates that at least part of Sands's Petition is premature because, according to him, his state-court habeas petition is still pending. (*See* ECF Doc. No. 10, PageID #54). Accordingly, pursuant to Rule 4 of the Rules Governing Section 2254 Cases, I recommend that the Court dismiss Sands's Petition without prejudice for lack of full exhaustion of his state-court remedies. *See Clark v. Schweitzer*, No. 5:21-CV-226, 2022 WL 2666314, at *1 (N.D. Ohio July 11, 2022) ("Accordingly, in that Petitioner indicates he has not fully exhausted his state remedies, the Petition is dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases.").

In the alternative, because it is not entirely clear which issues remain pending in state court

(*i.e.*, Sands simply indicates that "some issues" remain pending, and refers to an appeal apparently pending before the Ohio Court of Appeals for the Third District (ECF Doc. No. 10, PageID # 54)) I recommend that the Court give Sands an opportunity to file an amended habeas petition that excludes the unexhausted claims. *See Miller v. Sheldon*, No. 4:19-CV-2710, 2020 WL 7684868, at *6 (N.D. Ohio Oct. 6, 2020), *report and recommendation adopted*, No. 4:19-CV-2710, 2020 WL 7416910 (N.D. Ohio Dec. 18, 2020) (citing *Rhines*, 544 U.S. at 270).

## IV.     RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court: (1) DENY May's Motion to Transfer Successive Petition (ECF Doc. No. 9); (2) DENY Sands's Motions to Stay (ECF Doc. Nos. 2, 6, and 10), and DISMISS the matter without prejudice or, alternatively, ORDER Sands to file an amended habeas petition and DENY the Motions to Stay (ECF Doc. Nos. 2, 6, and 10) as moot; and (3) substitute Harold May, the current warden of the Marion Correctional Institution, as a proper Respondent in this case.

Dated: 10/17/2022

*s/Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## V.     NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings

> or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).